# DISTRICT OF COLUMBIA *v.* MATTINGLY.

POLICE POWER; STATUTORY CONSTRUCTION; BUILDING REGULATIONS; UNSAFE WALLS; PARTY WALLS.

1. The act of Congress of March 1, 1899 (30 Stat. at L. 923, chap. 323), requiring unsafe buildings or parts thereof to be repaired or removed, passed in the exercise of the police power, is in derogation of rights and enjoyment of property, and must be strictly construed.

2. Under the act of Congress of March 1, 1899 (30 Stat. at L. 923, chap. 323), a 9-inch partywall, rendered dangerous only by the removal of the bases of two chimneys projecting over the lot of the adjoining owner, cannot be properly condemned, and the cost of its reconstruction charged against the owner of the wall. If such wall is sufficient for its present uses, but insufficient for the purposes of a new building, the owner of the adjoining lot, intending to rebuild, may, under the building regulations, sec. 74, rebuild the wall at his own expense, making good to the owner of the wall all resulting damages to his property.

No. 1720.   Submitted October 9, 1906.   Decided October 19, 1906.

HEARING on an appeal by the respondent, the District of Columbia, from a judgment of the Supreme Court of the District of Columbia quashing a tax assessment upon a writ of certiorari.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from the supreme court of the District of

Columbia, and involves the construction of the act of March 1, 1899 (30 Stat. at L. 923, chap. 323).

The question was before the court below on certiorari. The appellee, as petitioner, filed a petition on the law side of the supreme court of the District of Columbia for a writ of certiorari to quash a tax of $1,292.69 assessed under authority of the above act of March 1, 1899. The writ of certiorari was issued, and the appellee's motion to quash the return of the commissioners of the District of Columbia to said writ was granted, and judgment entered accordingly.

The appellee, William F. Mattingly, as trustee, is the owner of a fee-simple interest in the lot and building thereon known as No. 1721 Pennsylvania avenue, N. W., adjoining the property known as Nos. 1723-1725 Pennsylvania avenue, N. W., the property of a Mr. Farren. Between these properties was a party wall. It appears that Mr. Farren desired to remove the old buildings from Nos. 1723-1725, and made a contract with W. H. Germann, a local builder, to do the work. Under date of June 30, 1904, in a communication addressed to the commissioners of the District, Mr. Germann said: "Upon very careful examination of the wall of the four-story building adjoining on the east (which serves both properties as party wall), I found a very dangerous condition of circumstances. *I thereupon called the building inspector into consultation regarding same, and he, by communication on file in his office dated June 4, 1904, notified me to stop operations until said east wall shall have been reconstructed.* He thereupon notified the owners of said east wall of his condemnation of same, and asked for the appointment of a commission of prominent builders to report on the condition of said wall, which report I think is now in your hands."

The communication, or notice, of the building inspector, referred to in Mr. Germann's letter, is dated June 8, 1904, and reads as follows:

Mr. L. M. SAUNDERS, Agent,⎫
        and                 ⎬Joint Interest.
Mr. W. B. FARREN, Owner.⎭

Gentlemen:—Examination has been made by the inspector of buildings and assistant inspector, of the west party wall of 1721 Pa. ave., N. W., and we find that said wall is about 9 inches thick in its entire height of more than 60 ft., and that said wall is endangered by two chimneys projecting 13 inches from wall and 50 feet high, partially supported on two 4″ x 4″ posts. And further, that the wall and chimneys are bulged at several places as much as 3″ and at another place concaved 4″, and out of plumb 3″, in a height of 26 feet above roof of adjoining building.

The wall is not safe in its present condition, or suitable for the uses of a party wall, and is therefore condemned, and must be removed within ten (10) days, and rebuilt within sixty (60) days.

Pending the rebuilding of said wall in accordance with the building regulations and before the removal of wall, the building must be shored up and secured against damage or collapse by storm or other causes.

This notice is served under provisions of section 16 (act of Congress) of the building regulations, D. C.

This notice, it will be observed, was addressed to both the agent of the appellee and to Farren, the owner of the adjoining property; but the record is silent as to whether or not service was made on Farren. No attention was given this notice by appellee, and on June 23, 1904, notice was sent his agent that, under the provisions of section 2 of the said act of March 1, 1899, the commissioners had "appointed a member of a board of survey to make a careful survey and report of the premises;" and notice was given appellee to appoint a member of said board of survey within three days from that date. The appellee, on the same day, through his agent, in a communication to the commissioners, said: "I am willing that Mr. F. W. Pilling, 1536

15th st., shall be such representative, subject to all objections as to the legal competency of such a survey."

Under the provisions of the statute, these representatives of the respective parties selected Charles Denham as the third member of the board, and the board, under date of June 29, 1904, made the following report: "We have this day made an examination of the west party wall of 1721 Pennsylvania avenue, N. W., and find that said wall is but 9″ thick in its entire height of 60 feet; that said wall is now greatly endangered by the removal of the bases of the two chimneys on the adjoining owner's side (which should be replaced at once) for the height of the first story. The only supports for said chimneys being two wooden posts, 4″ x 4″, under each one. The wall and chimneys are bulged and concaved in several places. Anchors have been inserted to hold this wall in place. So far as we could see, there is no recent settlement or moving of the wall to indicate that it is dangerous. We are of the opinion that, if the bases of the chimneys on adjacent side are replaced and properly secured, the adjoining property on the west can be demolished. We believe the present wall is sufficient for its present uses, but not sufficient for the use of adjoining owner to impose the weight of a new building upon."

This report of the board of survey was duly transmitted to the appellee's agent, who, on July 8, 1904, in a communication addressed to the commissioners, challenged the right of the commissioners to remove the wall, or to assess any costs against the property of his principal in that connection. Thereupon the District proceeded to remove and rebuild the wall, and assessed on account thereof $423.06 against Farren's property, and $1,292.69 against the property of the appellee. The legality of the latter assessment is here involved.

*Mr. E. H. Thomas,* Corporation Counsel, and *Mr. H. P. Blair* and *Mr. F. H. Stephens,* Assistants, for the appellant.

*Mr. J. J. Darlington, Mr. D. W. Baker* and *Mr. Frank J. Hogan* for the appellee.

Mr. Justice Robb delivered the opinion of the Court.

The first three sections of the act of March 1, 1899 (30 Stat. at L. 923, chap. 323, contain all of said act that is material to the issue in this case, and read as follows:

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That if, in the District of Columbia, any building, or part of a building, staging, or other structure, or anything attached to or connected with any building or other structure, shall, from any cause, be reported unsafe, the inspector of buildings shall examine such structure, and if, in his opinion, the same be unsafe, he shall immediately notify the owner, agent, or other person having an interest in said structure to cause the same to be made safe and secure, or that the same be removed, as may be necessary. The person or persons so notified shall be allowed until 12 o'clock noon of the day following the service of such notice in which to commence the securing or removal of the same; and he or they shall employ sufficient labor to remove or secure the said building as expeditiously as can be done; provided, however, That, in a case where the public safety requires immediate action, the inspector of buildings may enter upon the premises, with such workmen and assistants as may be necessary, and cause the said unsafe structure to be shored up, taken down, or otherwise secured without delay, and a proper fence or boarding to be put up for the protection of passers-by.

"Sec. 2. That when the public safety does not, in the judgment of the inspector of buildings, demand immediate action, if the owner, agent, or other party interested in said unsafe structure, having been notified, shall refuse or neglect to comply with the requirements of said notice within the time specified, then a careful survey of the premises shall be made by three disinterested persons, one to be appointed by the commissioners of the District of Columbia, one by the owner or other person interested, and the third to be chosen by these two, and the report of said survey shall be reduced to writing, and a copy served upon the owner or other interested party; and, if said

owner or other interested party refuse or neglect to appoint a member of said board of survey within the time specified in said notice, then the survey shall be made by the inspector of buildings and the person chosen by the commissioners, and in case of disagreement they shall choose a third person, and the determination of a majority of the three so chosen shall be final.

"Sec. 3. That whenever the report of any such survey shall declare the structure to be unsafe, and the owner or other interested person shall for three days neglect or refuse to cause such structure to be taken down or otherwise to be made safe, the inspector of buildings shall proceed to make such structure safe or remove the same, and the said inspector shall report the cost and expense of said work to the commissioners of said District, who shall assess the amount thereof upon the lot of ground whereon such structure stands or stood, and, unless the said assessment is paid within ninety day from the service of notice thereof on the agent or owner of such property, the same shall bear interest at the rate of 10 per centum per annum from the date of such assessment until paid, and shall be collected as general taxes are collected in said District; but said assessment shall be without prejudice to the right which the owner may have to recover from any lessee or other person liable for repairs."

The above act, passed in the exercise of police power, is in derogation of the rights and enjoyment of property, and must be strictly construed.

The legality of this assessment necessarily turns upon the interpretation to be given to the report of the board of survey, to which reference has been made. The notice of the building inspector preceding the report is to be considered as being but the preliminary step pointed out by the statute to call the board into being. The board having been legally constituted, its report must form the basis of our decision. In interpreting this report, however, it is proper that we should consider the surrounding circumstances. What were those circumstances? First, the owner of Nos. 1723-1725, the adjoining property, had decided to replace the old buildings on his premises with

a new building. It appears from the letter of his builder, previously referred to, something had been done towards the demolition of the old buildings before proceedings for the condemnation of the party wall were undertaken. The conclusion having been reached by this builder that it would be necessary to reconstruct this party wall, the matter was brought to the attention of the building inspector of the District, who thereupon, in the communication previously set out, notified the appellee that the wall had been condemned.

It appears from the above notice of the building inspector that there were two chimneys in this wall 50 feet high, and that they projected 13 inches from the wall.

The first finding of the board of survey is "that said wall is but 9″ thick in its entire height of 60 feet." Such a wall might or might not be dangerous, within the meaning of section 1 of the above act. In the absence of more definite information, we certainly would not be warranted in assuming that, because the wall was 60 feet high and but 9 inches thick, it was a dangerous wall. Especially is this true in a case like this, where it must clearly and affirmatively appear that the wall complained of was dangerous within the meaning of the statute.

The second finding is "that said wall is *now greatly endangered by the removal of the bases of the two chimneys on the adjoining owner's side (which should be replaced at once) for the height of the first story. The only supports for said chimneys being two wooden posts, 4″ x 4″, under each one."*

The building inspector, it will be seen, in his notice, states that the two chimneys projected 13 inches from the wall. It is evident from the report of the board of survey that the projection was on the property of Nos. 1723-1725. This fact, taken in connection with the second finding of the board of survey, irresistibly leads to the conclusion that the owner of Nos. 1723-1725 was alone responsible for thus endangering the wall, for the bases of the chimneys were removed on that side. It is apparent that two chimneys built into a wall from its base up would greatly strengthen it, and it is equally apparent that the removal of 10 or 12 feet of the bases of the chimneys, leaving

them practically suspended from the wall, would, as the board of survey found, greatly weaken and endanger the wall.

The next finding is that "the wall and chimneys are bulged and concaved in several places. Anchors have been inserted to hold this wall in place. So far as we could see, there is no recent settlement or moving of the wall to indicate that it is dangerous."

There is nothing in this finding which would warrant us in assuming that the irregularity of the wall was not caused by the removal of the bases of the two chimneys, or that the wall was then dangerous.

The next finding is that "we are of the opinion that, if the bases of the chimneys on the adjacent side are replaced and properly secured, the adjoining property on the west can be demolished."

This finding, in effect, charged the owner of Nos. 1723-1725 with repairing the damage he had caused by removing the bases of the two chimneys, and in no way supports the contention that the wall, irrespective of the removal of the bases of the chimneys, was dangerous, or that it would have been dangerous if the chimneys had been repaired.

In the next and last finding the board says: "We believe the present wall is sufficient for its present uses, but not sufficient for the use of the adjoining owner to impose the weight of a new building upon."

This finding, in our opinion, is consistent with, and is sustained by, the other findings in the report, and leads us to the conclusion that, had the owner of Nos. 1723-1725 made good the damage occasioned by him, the wall would have been safe even had the buildings been removed from Nos. 1723-1725.

In the case of *Ferguson* v. *Fallons,* 2 Phila. 168, the facts were almost identical with the facts in this case. In that case the court said: "The wall, *per se,* is not alleged to be dangerous and insufficient; but the adjoining owner, desiring to erect a large building, and claiming a right to use the wall as a party wall, found the same insufficient for his purposes, and, in order to have the wall reconstructed of sufficient strength, caused the present proceedings to be taken. We think the proper course

has not been adopted.   The 4th section of the act of 1856 was not designed for the purpose to which it has been applied. That section was obviously intended to secure the safety of the community, by causing dangerous walls to be removed, not to enable parties who desired to change or to make use of their neighbors' walls to compel them to pull them down or alter them to suit their purposes.   It would be contrary to all right to compel the owner of a perfectly good wall, if he presumes to appeal to the board of surveys for protection, to pay the inspector's fees and $10 for the use of the city, because his neighbor chooses to build a larger house than his, requiring higher and thicker walls.   The act in question means no such thing; its object is safety, and it makes the remedy a speedy one, because the owner of a dangerous or insufficient wall is sustaining a nuisance, and it inflicts a penalty for delay in abating it."

The District apparently proceeded upon the theory that the act of March 1, 1899, is applicable in a case where one of two joint owners of a party wall finds the wall insufficient for the purposes of a new building and desires its removal; for, in the fifth paragraph of its return to the petition below of appellee, we find the following:   "Defendant further says that *the owner of premises No. 1723 Pennsylvania avenue, northwest, in this city, which adjoins the premises assessed on the west, desired to erect a new building upon his property, but found that the party wall between him and No. 1721 was unsafe for the purpose;* that the defendant notified Lorin M. Saunders, who was the agent for the premises No. 1721, aforesaid, and who was the son-in-law of the said trustee Green, to remove and rebuild the said wall, but the said Saunders refused either to remove or rebuild the same; that thereupon a board of survey was duly and legally constituted, and, after inspection of the said wall, reported that it was insufficient for the use of the adjoining owner to impose the weight of a new building upon."

We do not think the act of March 1, 1899, applicable to such a case as this, where the wall, so far as the evidence discloses, would have been sufficient for the purposes for which it was erected but for the act of the adjoining owner.   The District, however, might have proceeded under section 74 of the building

regulations, which provides: "The inspector of buildings shall, upon the application of any building owner or his authorized agent, examine any party wall; and, if deemed by said inspector to be defective, out of repair, or otherwise unfit for the purpose of new buildings about to be erected, such party walls shall be made good or taken down by the building owner, as the decision may be. The cost and expense of such repair or removal, together with the expense of the new wall or walls erected in lieu thereof, shall be borne and paid exclusively by him; * * * and the building owner shall also make good all damages occasioned thereby to the adjoining owner or his premises."

This section was designed to meet conditions different from those comprehended in the act of March 1, 1899. That act provides a summary remedy in cases where the public safety is in danger. This building regulation is designed to meet just such conditions as apparently existed in this case, where a party wall is insufficient for the support of new buildings. The costs, however, in a proceeding based upon this building regulation, are to be paid by the party receiving the benefit from the change.

In the case of *Hoffstot* v. *Voight,* 146 Pa. 636, 23 Atl. 351, which is a case involving the regulation of party walls, the court said: "If the old wall is sufficient for the old use, and the new one is built solely to accommodate a new use, the adjoining owner, who merely continues the old use, cannot be called upon to contribute for his neighbor's improvement."

Our conclusion being that the wall was not "an unsafe structure" within the meaning of the act of March 1, 1899, the judgment must be affirmed.          *Affirmed with costs.*